DACA 23-9547. Council, we're ready for your argument whenever you're ready. Good morning, and may it please the Court. My name is Isabel Lonasco, and I represent petitioner Maria Aviles-Gonzalez. I would like to reserve three minutes for rebuttal. The BIA made two errors on this case. First, the Board applied the incorrect legal standard by requiring a police report as a prerequisite to meet the unable or unwilling analysis. Second, the Board erred by affirming the IJA's misstatement of Ms. Aviles' one-word response to the government's leading question. That misstatement is not supported by substantial evidence. This Court can grant Ms. Aviles' petition in either of these grounds to remand to the BIA for them to apply the correct legal standard. As evident in the record, in January 2012, 12 armed men dressed as police officers broke into Ms. Aviles' house demanding to see Fernando. In August 2013, Fernando was brutally murdered meters from the prosecutor's office. Well, what evidence was presented regarding contacts with the local police? It was my impression that nobody had ever bothered to call them about any of these events. Correct, Your Honor. They did not file a police report. Ms. Aviles' testimony through the entire proceedings has been that she feared going to the police because she would be killed if she filed a police report. What is the evidence that that might have occurred? Or do you want us to just hold that the entire police department is not believable and they don't do their job and that's true throughout Mexico? Your Honor, this case before you has corroborating evidence that has been ignored in this case. We have evidence that is the testimony from Ms. Aviles. We have the husband that testified in the individual hearing corroborating that similar situated people in the community have been killed after reporting. Country report, let me direct your attention to AR-427. Country report state that 93% of people in Mexico do not file a police report because they believe they are in league with the criminals. Also, Freedom House, it's an exhibit presented by Ms. Aviles, exhibit that was not contested by the government, confirms this number that 93% of people in Mexico do not file a police report. Here, what we are asking this court is to remind the case to the BIA for them to do a totality of the circumstances analysis. This is not a new argument. The BIA more than 20 years ago in matter of SA, they have articulated that filing a police report is not essential to meet your burden of unable or unwilling. Most recently, in matter of CBT, which was raised by the government, confirms this statement that filing a police report is not required when reporting is futile or dangerous. That was the case here. The facts are quite a bit different in the recent case that the government provided CBT. That was a juvenile or he was a juvenile when he would have been required to report what was going on with his father. The BIA said you've got to consider the fact that he is a juvenile and that he's young and he doesn't really have the ability to report and that it would have been futile to require him to report. So how does that case really help you here when we're dealing with an adult who clearly understood that she could have reported and had the ability to do so? Your Honor, age was not dispositive in matter of CBT. It was very significant. That was what they directed on remand. That was what was directed to be considered by the IJ, along with the totality of the evidence. Correct. They discussed this was one of the many things they considered. They considered punctual reports. They considered the testimony of everybody involved. In this case, we have evidence, corroborating evidence, overwhelming evidence that supports that Mexico was unable or unwilling and also that reporting would have been dangerous. Matter of CBT adopted Rosales Gusto in the First Circuit. The First Circuit has also said that it's not fatal not filing a police report. Well, that's not what the BIA said here. The BIA didn't say it was fatal, that the report wasn't filed. It went on to consider, I mean, the evidence, right? It didn't just base it on that one fact. Correct. They based their analysis in the totality of the circumstances and that is what we are asking this Court today, to remand the case for them to look at the totality of the circumstances, H being just one of the elements as the report, the country conditions, the statement that has been considered. Well, the Court did consider the country conditions. I mean, the BIA did consider the country conditions. The BIA only stated that Mexico was doing efforts to prevent this. And there was some evidence in the record to support that. Correct, Your Honor. However, the record supports also that there's additional evidence that was not consistent. The misstatement of the IJ in his decision that she did not file a police report because she believed that filing a police report, it would anger them and... The police. Correct. That is the misstatement. That is the second issue of this case. Yeah. The way I read the BIA's determination and the IJ's, that they viewed her testimony on that as inconsistent because on the one hand, she said, yes, I didn't file a report because I thought the police would then take action against me. And then she also said, I didn't file a report because I thought if the police tried to protect me, that I would be retaliated against. Correct, Your Honor. And so they said that's inconsistent by itself. So it's not supportive of her argument. Your Honor, the BIA, after finally assuming credibility and the government waived this the IJ permissively found the gang members fear authorities. This is rebutted by the evidence in this case. We have, I already mentioned country reports, Ms. Avedis' testimony throughout the entire proceedings has been the AR-141, quote, because of cases I have seen back in the same city that have gone and made a police report and then later the police filed. And they say it was because they went to file a police report. Then we have husband's testimony at the individual hearing corroborating the same statement on AR-165, saying that there have been cases that people report a case and then you have been threatened and you make a report, immediately the police will go and tell them that you made a report and they will kill them. These supports her evidence. Also, we have immediate family members who were killed after Fernando. We have her cousin, Felipa, was brutally murdered. Christopher, her nephew, was also brutally murdered. That was evidence that was not considered in this case. Also, there is a report in Human Rights Report. But not by the police. Not by the police. Not by the police. The other, the cousin and the nephew. Correct. They were killed by the same criminal organization that targeted, that brutally killed Fernando. But we're talking now about why she didn't report to the police. She didn't report. The evidence before this court supports that filing a police report would have been futile or dangerous. Had Maria, Ms. Aviles, filed a police report, she would have been brutally murdered the way her brother, her cousin, and her nephew were killed. But requiring a police report... Did her brother, did her nephew, they weren't killed after filing a police report, were they? No, Your Honor. I'm trying to get to, that's the part of it that the BIA relied on. And that's why I'm trying to get you to focus on that part, which is what the inconsistent statements the BIA said she made about the police and why she didn't report. Because that's the real nut of this case. Your Honor... And I didn't hear, you did say that yes, the BIA accepted your credibility. The trouble is they said that, but then they said, with respect to this particular issue, we're not accepting your credibility because of these inconsistent statements. Your Honor... How, could you address those inconsistent statements? Your Honor, going to that inconsistency, let me point yourself to the record AR-165. In the questioning, she says, when she's asked about why she didn't file the police report in AR-165, she says, because we believed that the police would tell them that we went to make a report. Then the government asked, do you believe that that would happen? Meaning the police would tell the gang members. Exactly. And then she, they asked... And the gang members would retaliate because the police were basically part of it. Correct. Okay, so she says that. She says that, and then the government asks, do you believe that would anger them that you went to the police? Her response, one word, yes. Yes. The following question, because the police could interfere with their things, yes. Beyond a yes, that response to that question asked in a different language through an interpreter, there's no evidence in the record to support that misstatement. For those reasons, following Hernandez-Avalos from the Fourth Circuit, the same scenario happened there where the IJ and the BIA misstated the testimony, ignored evidence, ignored country reports. For those reasons, this court should remand this case to the BIA for them to apply the legal standard, the correct legal standard that has been on the books for more than 20 years. Matter of essay, matter of CET, Rosales-Justo in the First Circuit also articulate that filing a police report is not a requirement. People fleeing from their home country seeking asylum, they are fearing for their lives. Requiring them to file a police report before fleeing frustrates the purpose of asylum. Are there any limits to the rule that you're maybe proposing as far as Mexico per se being unwilling and unable to provide protection? Or would the same argument work for anyone from Mexico? Our argument is that the BIA should follow its own precedent by considering the totality of the circumstances, country reports, corroborating evidence that was not done here. And if there are no further questions, I would like to reserve the remaining time. Very well. Thank you. May it please the court. Alana Young for the Attorney General. Unless the court has any specific questions or issues that the court would like the government to go to, I would like to address counsel's points and start with the most recent points that counsel made regarding the court's questions. Regarding the limiting principle, petitioner's position is that the Mexican government is unable or unwilling to protect the petitioner based on general country conditions, evidence, including corruption. But there is no limiting principle here. If this court takes the position of the petitioner, then all individuals coming from Mexico would be able to per se assert that the Mexican government is unable or unwilling to protect them. Well, if that's correct, what would be wrong with doing that? That's not correct, Your Honor. It's not wrong if the evidence supports it and if petitioner's position was consistent with the case law. But that's not the position here. Here, the board and the immigration judge considered all the evidence in the record. It looked at the totality of the record, including petitioner's personal circumstances and then also the country condition evidence. I would like to point out one point first before I get there. Petitioner raised the question of issues with the interpretation and that it was through an interpreter, it was through a translation. That issue is unexhausted, Your Honor, and the government requested the government that this court not consider it. It was not raised before the immigration judge that she had an interpretation issue. It was not raised before the board that there was an interpretation issue, and it's not exhausted before this court. Well, she is correct that she gave a one-word response to a question that was leading that she was inconsistent with anything else that she had said. She had consistently said she was afraid to report to the police because she thought they would then report to the indicates that no, she's apparently not afraid that the police would do that. And that's what I'm saying is that's inconsistent with the record, and it would seem to be an indication that she didn't quite realize what she was saying. A few things, Your Honor. And it was a leading question asking for a one-word response, not supported anywhere else in the record. And it looked to me like the BIA relied heavily on that single credibility finding after the BIA said, we find her credible or we're going to assume her credibility. So that was inconsistent within the BIA's decision itself. Your Honor, I disagree with that. I disagree because it wasn't just a one-word. Yes, it was on directive. It was not on directive then. It was on cross. The government was permitted to ask leading questions. It was two questions. It was a series of questions, three questions. Did you go to the police when they threatened you? No. Why not? Why not? Because we believe that the police would tell them that we went to make a report. Do you believe that that would anger them that you went to the police? Yes. Because the police could potentially interfere with their threats or harm? Yes. After the government asked that question, Petitioner's Counsel had the opportunity to redirect and ask any other questions, and Petitioner's Counsel had the opportunity to further elaborate or explain if it was not consistent with the record to do so. Was there anything in the record consistent with that question, the second question about whether, the question was whether she, would it anger the gangs if she went to the police because the police, it was a long question, but because the police could potentially interfere with their threats or harm. That was the question she put to her, and she said yes. Yes. Was there anything else in the record where she made that assertion? No, Your Honor. But before this court, before these courts can't standard of view substantial evidence, and her pointing to one incident in the record does not compel reversal of the... Well, she's suggesting there's a lot of things that weren't considered. So if that's true, if there were matters in the record that were not considered, perhaps that might have made a difference on this somewhat questionable credibility finding. It wasn't a credibility finding, Your Honor, because... Yes, it was. It was absolutely a credibility finding. The BIA said she gave two different answers, so we don't find her credible. The BIA... Basically. No, the BIA accepted the immigration judge's credibility to assume that the petitioner was credible, but found that her testimony was not persuasive or specific to meet her burden of proof, and that's under McDye. Credible testimony does not mean truth or does not mean legal victory, and that's the situation here where the immigration judge and the board consider the totality of the circumstances, and I say that because the immigration judge specifically said in his decision, I've considered all the evidence of record, regardless of whether I'm stating them in this decision. Before the immigration judge rendered his decision, he had a thorough dialogue with the parties regarding the evidence in the record, including responding to DHS's objections to three pieces of the evidence, and the board, on appeal, had to consider the totality... Did consider the totality of the evidence because the board specifically rejected petitioner's arguments regarding the evidence in the record. Thank you. Could you address some of the corroborating evidence that petitioner says was not considered about the number of people, the percentage of people who are afraid to file reports, 93% or... Yeah. And the husband's affidavit. Yes, Your Honor. The agency did consider that evidence, and it was considered in the totality of the circumstances. How do we know that? Because the agency explicitly said so, and this court assumes that the agency did itself, unless there's other indication of the record. Besides the immigration judge, the agency explicitly stating so, we have other evidence in the record that shows that substantial evidence supports the agency's decision, and that's including that the agency considered petitioner's testimony about why she did not contact the police, her fear, her subjective belief that the police would report to the gang, or her subjective belief that there was retaliation. But then we also have other evidence in the record that, Your Honor, petitioner points to global evidence about Mexico and corruption. But then if we look at the evidence in petitioner's case, including that when Fernando was murdered, there was police presence. There was at least three agencies that appeared at the scene of the crime that investigated. For the cousin Felipe Azuna's murder, there was an investigative order about reports, interview, documentations about what happened. We also know from the record that petitioner contacted the police when her sister, she testified that when there was a dead body and her sister suspected that it was Fernando, she testified that she called the police and asked about it. Given that there's lack of direct evidence here that shows that the police in Guerrero would, that she contacted the police, we don't know whether the police would have, like what the police would have done, how the police could have reacted, or whether the police, the government would have helped. And because that's what we have direct evidence, petitioner can't, could not before the agency established that the government was either unable or unwilling to help protect her. And then we looked at the more general country condition evidence, which the government did, which the agency did consider. It was that the government, Mexican government had various efforts, implemented various efforts of corruption reform, including turning the previous corruption agency from agency-led, state-led, to a civilian board and enacting constitutions and creating other reforms to give these, this agency autonomy and the ability to fight corruption. Then we also have all the evidence about gang, about gang violence and Mexican government attempting to protect its citizens from gang violence, drug cartels. But apparently they're not doing it at all. They are doing it. I believe three surfers would kill their cart stolen. They were dumped in a well and the police couldn't do a thing about it. The police, it's, the standard is not perfect protection, Your Honor. It certainly is not. It's not. It's government, whether they're willing and able, and they are trying to make efforts. And that's where the anti-corruption, that's what, there's an interesting Ford's article in the record that talks about how Mexico has tried various corruption reforms, but it didn't work. So they engaged civil society. Professors came in and scholars came in and came up with this new way to show, okay, that didn't work in the past. How do we try something else? That is the government, that is the Mexican government's efforts. And that shows its ability and willingness. But if those efforts are totally useless, I mean, I read just the other day that in the elections coming up, the gangs are killing off the people that are running against their friends. Yes, Your Honor. They're really doing a good job of cleaning up the whole situation. Yes, they are trying, Your Honor. And the evidence in this case is showing that the government's effort, they are making efforts. And the evidence in this case doesn't show that the petition hasn't shown that the government in Guerrero, the police in Guerrero would not be unable or unwilling to help her. She called the police when they found the missing body. The police showed up when they found Fernando's body. They ordered an investigation from Filipa. She has a subjective belief, but her subjective belief that the government and the police would not be able to help her is not sufficient for her to meet her burden of proof. And therefore, this court doesn't compel reversal. What does she need to show in your opinion? Yes, Your Honor. There's a variety of things that she could have shown. She could have demonstrated. She could have been killed. That would show right away. No, Your Honor. She could have, when petitioner raised several points about her claim that she would be killed if she had reported to the police. And then when she was asked specific questions about, well, can you tell me who these people are or names or addresses? She wasn't able to provide the names of the people. She said, I don't know their names or their addresses, just people I've heard about. But that's her subjective belief. We don't have evidence to show that the police in Guerrero would not have done something or would not have helped. She could have had specific, fact-specific testimony about her claim, but she didn't present that evidence. If the court looks at a matter of essay, a matter of CGT, those petitioners, I understand the facts of those cases are different. Well, I do want to talk about CGT because you just told me that it was enough in making this very specific fact inquiry about the reasonableness of her not reporting to the police. You told me it was enough for the BIA to simply say, we've considered your record. They don't have to specify that they've considered, they don't have to talk about the corroborating evidence that she presented or anything else. But yet in this case, which is factually different, but the BIA said very specifically when they remanded to consider the reasonableness of the failure to seek assistance from authorities, that they were to consider all evidence on remand, and this analysis should include the respondent's testimony, available corroborating evidence, and country condition reports. They don't say it's enough to say, oh, by the way, we considered everything, which is what you're telling me today. No, Your Honor. Aren't they saying here, when emphasizing how fact-specific this inquiry is, that you've got to at least address some of the circumstances the petitioner put into the record? Your Honor. That's corroborating, and those, I can see under that here in the IJ's analysis or in... Well, Your Honor, the immigration judge and the board, this court's review is of both decisions, because the immigration judge... I understand. This court's, and because it's not only that one of the indications of this court can determine, can, one of the indications that the agency considered all the evidence is, yes, they explicitly said so, but then also it's because they... Well, that's not what they suggested here. They said on remand, this is a very specific fact inquiry, and you basically need to show your work. Yes, and the agency did show its work when... How? The immigration judge... With respect to the corroborating evidence that petitioner pointed to. The immigration judge, they recognized the evidence regarding the country conditions. They did. Well, what about the other corroborating evidence she pointed to about... The violence in Mexico. They did consider the violence in Mexico. What about her own personal family and the violence and the fear that she had based on the murders in her own family? That was considered... And what about the 93% statistic of why, of the number of people that don't report? None of that was mentioned. It wasn't mentioned, Your Honor. It was general country conditions.  What about her personal circumstances? You mentioned that that's what they considered, her personal circumstances as well as country conditions. What personal circumstances did they consider? Whether she reported it to the police, whether she... But that's the very fact question that we're talking about. That is the question. What did they consider in the totality of the circumstances that went to whether she reported to the police? Her testimony. Not just... Yes, her testimony. Right, which we've discussed. Yes, her testimony. The only thing they said about her testimony is that she had a one-word answer that was inconsistent with her testimony. That's the only thing I saw. May I, Your Honor? Please, yes. The agency did consider all of her testimony, considered all the corroborating evidence. It's not... The agency's decision explicitly responds to Petitioner's arguments about her testimony, showing that it considered the evidence and showing that it considered her personal circumstances in this case. Okay, thank you. Thank you, counsel. Had Ms. Sabines filed a police report, she would have been killed the way her brother Fernando was killed. Well, wait. Why is that so? I thought they were after him as a drug dealer. Fernando, Fernando was killed meters from the prosecutor's office, which shows a complete disregard for the authorities. In fact, had she filed a police report, she would have been killed... Well, that's not what you have to prove anyway. You don't have to prove she would have been killed. She only has to have a reasonable fear of that. Yes. That's all you need to show. And the matter of CET, you need to prove not only considering the totality of the circumstances, the reasonableness, why the police report... Filing a police report was more dangerous or futile than it was in this case. Had she filed a police report, it wouldn't have been futile. She would have put her life in danger. Now, in this case, what we are asking this court is to remand the case to the VA for them to apply their own legal precedent, their own legal standard. Consider this is a fact-intensive analysis. Consider the totality of the circumstances. Corroborating evidence, her testimony has been consistent the entire time. Our country reports, which is, we have a wealth of evidence to support that Mexico was not only unable, but also unwilling to protect her. For these reasons, I ask this court to remand this case. Adopt matter of CET. Follow Rosales-Justo. Multiple circuits have already ruled on the unable or unwilling analysis. And a police report should not be required to meet that burden. And if you don't have further questions, I'd like to thank you. Thank you, counsel, for your arguments. The case is submitted and counsel are excused.